**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 06-80751-CIV-LENARD/TORRES

PAMELA MORRISON,

    Plaintiff,

vs.

MORGAN STANLEY PROPERTIES, a/k/a MORGAN STANLEY REAL ESTATE FUND IV DOMESTIC - GP, L.L.C., a foreign corporation authorized to conduct business in the state of Florida,
KITSON, L.L.C., a Florida limited liability corporation authorized to conduct business in the state of Florida, and
IBIS WEST PALM PARTNERS, L.P., a/k/a MSKP IBIS PARTNERS GP, L.L.C., a foreign limited partnership authorized to conduct business in Florida, and
IBIS MANAGEMENT SERVICES, INC., a Florida corporation authorized to conduct business in Florida,

    Defendants.
_____/

**FINAL ORDER ON DEFENDANT MORGAN STANLEY PROPERTIES'
MOTION TO DISMISS THIRD AMENDED COMPLAINT WITH PREJUDICE**

This matter is before the Court upon the Motion of Defendant Morgan Stanley Properties a/k/a Morgan Stanley Real Estate Fund IV Domestic - GP, LLC ("Morgan Stanley" or "Defendant")[1] to Dismiss Third Amended Complaint with Prejudice [D.E. 73], and Plaintiff Pamela Morrison's ("Plaintiff") Response thereto [D.E. 77]. The parties consented to the undersigned Magistrate Judge rendering a final order on this motion. [D.E. 30]. After

---

[1] This motion was filed solely by Defendant Morgan Stanley which at the time was the only named Defendant to have been served with the Third Amended Complaint.

carefully considering the motion and response, and the entire record in this case, the Court GRANTS Defendant's motion to dismiss with prejudice. The Third Amended Complaint is dismissed with prejudice, for the reasons discussed below.

## I.    BACKGROUND

Plaintiff filed her Third Amended Complaint against Defendants Morgan Stanley, Kitson, L.L.C. ("Kitson"), Ibis West Palm Partners, L.P., a/k/a MSKP Ibis Partners GP, L.L.C. ("Ibis West"), and Ibis Management Services, Inc. ("Ibis Management"). [D.E. 69 ("Third Am. Compl.")].[2] Morgan Stanley has moved to dismiss this complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that Plaintiff failed to state any viable claims against it and because the complaint does not comport with either the Court's August 9, 2007 Order dismissing the original complaint without prejudice [D.E. 39 ("Order")] or the January 14, 2008 Order dismissing the Second Amended Complaint because Plaintiff failed to comply with Fed. R. Civ. P. 8(a) and 10(b) [D.E. 66].

### A.    *Plaintiff's Factual Allegations*

According to the factual allegations in the Third Amended Complaint, Plaintiff was employed by Ibis Golf and Country Club ("Club") as Assistant General Manager and Food & Beverage Director. Third Am. Compl., ¶ 1. Morgan Stanley was at all pertinent times the "controlling partner" of the Club. *Id.*, ¶ 2. Plaintiff began her employment with the Club in 1999, ending in 2003 as its Assistant General Manager and Food & Beverage Director. *Id.*,

---

[2]    The Court has by separate Order issued today dismissed without prejudice Plaintiff's claims against the other three Defendants, Kitson, L.L.C., Ibis West, and Ibis Management, for failure to timely serve the complaint on them. Accordingly, the Court will consider the claims in the Third Amended Complaint as against the sole remaining Defendant, Morgan Stanley, who is the movant here. Because the Court currently lacks jurisdiction over the unserved Defendants, the Court cannot dismiss the claims filed against these Defendants with prejudice.

¶ 6.  Prior to employment at the Club, Plaintiff participated in a mandatory drug test, as was required of all employees.  *Id.*, ¶ 7.  "It was stated that [the Club] participated in the Drug Free Workplace Program and testing was mandatory[.]" *Id.*

On July 25, 2003, Plaintiff was contacted "by a representative from the Controller's office regarding a charge on Check No. 117 to Ibis General Manager Clifford Wilson in the amount of $600.00 for goods that Mr. Wilson had taken, without cost, from the Food & Beverage division of Ibis without the knowledge of the Food & Beverage Director, for his personal use." *Id.*, ¶ 11.  After Plaintiff confirmed that Wilson had on several occasions taken food products for his personal use, "including the one for which he had been billed the retail cost of the goods taken," she "re-affirmed the charge to Mr. Wilson's department, from the Food & Beverage Department, to the Controller's office[.]"  *Id.*  Within hours, Wilson and Controller William Vander May called Plaintiff to Human Resources and suspended her, with pay, for "drinking on the job." *Id.,* ¶ 12.  It later was "made evident" that the charge would be changed from "drinking on the job" to "participating in shift drinks," an accepted practice at the Club.  *Id.*, ¶¶ 12, 14-15.

On August 1, 2003, Plaintiff was contacted by the Human Resources Manager for an interview, at which time Plaintiff's husband advised that Plaintiff would seek legal representation prior to meeting with any representative of the Club. *Id.*, ¶ 17.  That same day, Vander May attempted to contact Plaintiff by phone, and through Plaintiff's husband, "demanded" that she meet with him within the next two days.  *Id.*, ¶ 18.  After being advised that Plaintiff intended to obtain legal counsel, Vander May "informed Plaintiff's husband that Plaintiff could consider herself <u>terminated</u>, by him, at that point." *Id. (emphasis in original).*

On August 5, 2003, Plaintiff was "formally terminated" by certified letter from Vander May for her "refusal to communicate with us" and "refusal to meet with us to discuss the outcome of our investigation and your options with regard to your employment with IBIS." *Id.*, ¶ 21.

Later the attorney for Defendant stated that Plaintiff was terminated only for failing to meet with the Club investigator, Vander May, and that there was no mention of "drinking on the job" in her personnel file. *Id.*, ¶ 22. Vander May refused to allow Plaintiff legal counsel; refused to allow her access to her personnel file; and refused to name any accusers or cite any violations of policy. *Id.* The attorney also stated by letter that "IBIS" had already decided to offer her a "termination/severance package" regardless of the outcome of any investigation. *Id.*

Finally, Plaintiff heard from "IBIS members, peers from other clubs and others regarding her termination for "drinking on the job'." *Id.*, ¶ 24. Because of the "intentional, willful and malicious harm of this fabricated incident," Plaintiff has been unable to obtain employment at the level previously held at the Club. *Id.*

### B.   *Procedural History*

Plaintiff initially sued Morgan Stanley Properties, Kitson & Partners, LLP, and Ibis West Palm Partners, LLP, on August 2, 2005. *See Morrison v. Morgan Stanley Properties, et al.*, Case No. 05-80701-Civ-Zloch (S.D. Fla.). The Honorable William J. Zloch dismissed the case without prejudice after Plaintiff failed to comply with his Order to file an amended complaint within a certain period of time. [D.E. 15, 16 in Case No. 05-80701-Civ-Zloch].

Plaintiff then filed a new action (the present one) with a more substantive complaint on August 7, 2006, naming Morgan Stanley Properties, a/k/a Morgan Stanley Real Estate Fund IV Domestic - GP, LLC; Kitson & Partners, LLP, and Ibis West Palm Beach Partners, LLP a/k/a MSKP Ibis Holdings, LLC, as Defendants. [D.E. 1]. On August 9, 2007, we granted

those Defendants' motion to dismiss the complaint without prejudice and afforded Plaintiff the opportunity to file an amended complaint that corrected the deficiencies discussed in detail in the Court's Order.  [D.E. 39 ("Order")].

Plaintiff purportedly complied with that Order by filing an Amended Complaint, naming the same Morgan Stanley entity in addition to Kitson, L.L.C., Ibis West Palm Partners, L.P., a/k/a MSKP Ibis Partners GP, L.L.C.,  Ibis Management Services, Inc., and four individuals.  [D.E. 45].  On October 22, 2007, however, we granted a defense motion for a more definite statement as to the Amended Complaint, principally because the substantive claims raised therein did not specifically identify which Defendant was subject to which claim and the factual basis for each Defendant's liability.  [D.E. 52].  "As it stands now, the amended complaint purports to raise the same claims against the same defendants, but with no explanation of why legally or factually each separate defendant is liable under such claims."  *Id.*  Therefore, the Court ordered Plaintiff to either file a second amended complaint, or alternatively file a supplemental statement that, for each count of the Amended Complaint, identified which Defendant(s) was liable under that claim, together with a short and plain statement of what legal or factual basis existed for that Defendant(s) liability under each claim.  *Id.*

Plaintiff filed her Second Amended Complaint on October 30, 2007, against the same parties.  [D.E. 54].  We again granted Morgan Stanley's motion to require a more definite statement from Plaintiff because the latest version of the complaint violated the standards set out in Rule 8(a) and 10(b) and was so vague and ambiguous that none of the Defendants could reasonably be expected to frame a responsive pleading.  [D.E. 66].  The Court allowed Plaintiff one final opportunity to file a complaint that satisfied the pleading requirements of those

rules, warning that if she failed to comply, the Court would entertain a motion to dismiss this cause with prejudice.

On January 28, 2008, Plaintiff filed her Third Amended Complaint which is now before us. [D.E. 69]. She kept the same four business entities named in the two previous complaints but dropped the individual defendants. This complaint purports to state eleven (11) claims these Defendants: unpaid wages and benefits (Count I); willful violation of Drug-Free Workplace Act (Count II); willful violations of Fair Labor Standards Act (Count III); violation of Privacy Acts (Count IV); spoliation of evidence (Count V); wanton, reckless and willful misconduct (Count VI); negligence (Count VII); slander - defamation of character (Count VIII); physical and metal anguish (Count IX); personal damages (Count X); and punitive/special damages (Count XI). Defendant Morgan Stanley is seeking dismissal with prejudice.

## II.   ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint that fails to tate a claim upon which relief can be granted. The Court must take the allegations in the complaint as true, and view them in a light most favorable to the plaintiff. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993); *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). Under Fed. R. Civ. P. 8(a), a complaint need only include a short and plain statement of the claim sufficient to put the defendant on notice of the claim raised against it. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007). The factual allegations in the complaint need not be detailed but "must be enough to raise a right to relief above the speculative level." *Id.* at 1964-65. "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965. The Court does not require heightened fact pleading, but does require enough facts to state a claim to relief that is plausible on its face. *Id.* at 1974.

As the Court has noted previously with regard to Plaintiff's complaint, a *pro se* pleading, like the one before us, is viewed with considerable leniency and is held to a less stringent standard than a pleading prepared by legal counsel. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (allegations of a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers); *GJR Invs, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (courts do and should show a leniency to *pro se* litigants that is not enjoyed by those with the benefit of a legal education). The leniency afforded *pro se* plaintiffs in assessing their pleadings does not, however, permit a trial court to act as counsel for a party or to rewrite deficient pleadings. *Lampkin-Asam v. Volusia County Sch. Bd.*, No. 07-12704, 2008 WL 80708, *2 (11th Cir. Jan. 9, 2008); *see also McNeil v. United States,* 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."). Ultimately, even a *pro se* complaint must allege sufficient facts and legal elements to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

### A. *Count I - Unpaid Wages and Benefits*

In Count I of the Third Amended Complaint, Plaintiff purports to assert a cause of action for unpaid wages and benefits against Defendant as an "owner" of the Club. Third Am. Compl., ¶ 26. She asserts that she has not been terminated from the Club, as "[d]isciplining or discharging an employee for refusing to proceed with an interview without requested representation constitutes an unfair labor practice" with a remedy of reinstatement with back pay and benefits. *Id.*, ¶ 29. According to the complaint, Defendant[3] "illegally singled out

---

[3] When Plaintiff refers to Defendant in the various counts, she refers more precisely to each Defendant "directly, or by and through an officer, director, or managing agent, authorized representative, employee or other agent to engage in the aforesaid conduct and ratified all such activities by said agents. . . ." *See, e.g.,* Third Am. Compl., ¶ 30.

Plaintiff in violation of the Florida[] Department of Labor (Wage & Hour), the National Labor Board Act, Wrongful Combination (Fla. Stat. 448.045) and the Fair Labor Standards Act[.]" *Id.*, ¶ 30. In connection with the wrongful combination charge, Plaintiff cites "malicious actions" by Clifford Wilson, Steven Philbrook and William Vander May  "for the express purpose of removing Plaintiff from her position. . . ." *Id.,* ¶ 30, n.26. Plaintiff further alleges that Defendant "participated in retaliatory personnel action, as evidenced by the illegal act of 'termination' without due process." [*Id.*, ¶ 31].

Plaintiff has failed to meet her burden with regard to Count I. Her claims here relate to unfair wage or benefit practices, but she has failed to explain the factual and legal bases which entitle her to relief from this Defendant. She has simply alleged that Defendant illegally singled her out, presumably by disciplining or discharging her for refusing to proceed with an interview without requested representation, in violation of several statutes, and that she is entitled to reinstatement. This is insufficient to place Defendant on notice of the specific statutory provisions it allegedly violated, and how. More important, however, is her failure to link this particular Defendant to her employment at the Club. She alleges that Morgan Stanley was an owner of the Club, not her employer, and she does not explain how this makes Morgan Stanley liable to her for unpaid wages and benefits. According to Plaintiff, Clifford Wilson, Steven Philbrook, and William Vander May were all officers of another Defendant, Ibis Management Services, Inc., a management and payroll company at the Club. *Id.*, ¶ 5. Plaintiff has not alleged why Morgan Stanley should be held accountable, under any viable legal theory, for the actions of these individuals.

Plaintiff has failed to meet the requisite pleading requirements of Rule 8(a) with regard to Count I. As this is not the first time Plaintiff has attempted to raise this claim, and she has been given several opportunities to correct identified pleading deficiencies, we will dismiss

Count I with prejudice. *See Lampkin-Asam v. Volusia County Sch. Bd.*, No. 07-12704, 2008 WL 80708, *2 (11th Cir. Jan. 9, 2008) (where *pro se* plaintiff had been given three opportunities to cure pleading defects, in particular the failure to set forth a short and plain statement of the claims showing entitlement to relief, dismissal with prejudice was appropriate).

        **B.**      *<u>Count II - Willful Violation of Drug-Free Workplace Act</u>*

In Count II, Plaintiff purports to state a claim against Defendant under Florida's Drug-Free Workplace Act, Fla. Stat. §§ 440.102 and 440.102. She alleges that all employees prior to their employment at the Club participated in mandatory drug testing as part of the Drug-Free Workplace program for which Defendant as an owner/agent "received the benefits associated with the Drug-Free Workplace Act." Third Am. Compl., ¶ 34. She claims that she was "initially suspended-with-pay for 'drinking on the job' . . . without any information, evidence, testing or production of facts as required[,]" that Defendant "failed to adhere to any of the standards of the Drug-Free Workplace Act that it states adherence to in its Policies and Procedures,"and that Defendant treated her differently from other directors, staff and upper-level management "for wilful and malicious purposes of its own; in violation of the Drug Free Workplace Act; and contrary to the Policies and Procedures in place at the time[.]" *Id.*, ¶¶ 35-36, 39.

Even a liberal reading of Count II reveals that Plaintiff failed to properly plead a cause of action under the Drug-Free Workplace Act. As set forth in § 440.101(2), if an employer chooses to implement a drug-free workplace program in accordance with § 440.102, the employer may require an employee to submit to drug testing and, if drugs or alcohol are found in the employee's system in a proscribed amount, the employee may be terminated and will

forfeit eligibility for medical and indemnity benefits.[4] Plaintiff has not alleged that Defendant implemented a drug-free workplace program at the Club in accordance with Fla. Stat. § 440.102, and that Defendant violated such a program in its treatment of Plaintiff. Allegations that Defendant received benefits associated with the Drug-Free Workplace Act and that all employees participated in a mandatory drug test before beginning employment at the Club are insufficient to show that Defendant implemented a program in accordance with the statute.

Even if Plaintiff had shown this, Plaintiff did not specify which provisions of the statute were allegedly violated when she was "initially suspended-with-pay" and treated differently from other directors, staff and upper-level management. Moreover, the failure of Defendant to maintain a drug-free workplace program in accordance with statutory and regulatory requirements would render Defendant ineligible for discounts under Fla. Stat. § 627.0915, *see* § 440.102(2), but Plaintiff has not alleged how a failure to follow the procedures of a properly-implemented drug-free workplace program creates a cause of action of the type alleged here.

This statute does not require an employer to set up a drug-free workplace program, *see* § 440.102(7)(h), and it does not expressly create a private cause of action against an employer who does so but fails to follow its own program procedures. Where a statute does not explicitly provide for a private cause of action, courts generally look to legislative intent to determine whether a cause of action should be judicially inferred. *Murthy v. N. Sinha Corp.*, 644 So. 2d

---

[4] As we previously explained when we granted Defendant's motion to dismiss the original complaint, an employer *may* test employees or job applicants for certain drugs and alcohol, but it is not *required* to set up a drug-free workplace program. "No cause of action shall arise in favor of any person based upon the failure of an employer to establish a program or policy for drug testing." § 440.102(7)(h). Furthermore, to establish a drug-free workplace program under this section, and thus qualify for the discounts provided under Fla. Stat. § 627.0915 and be able to deny medical and indemnity benefits to employees under this chapter, an employer must implement drug testing that conforms to the standards and procedures established in this section and all applicable rules adopted pursuant to this section as required in § 440.102(4).

983, 985-86 (Fla. 1994) (concluding "[i]n general, a statute that does not purport to establish civil liability but merely makes provision to secure the safety or welfare of the public as an entity, will not be construed as establishing a civil liability."); *Horowitz v. Plantation Gen. Hosp, Ltd. P'ship*, 959 So. 2d 176, 182 (Fla. 2007) (reaffirming the principles enunciated in *Murthy*). In our case, the stated legislative intent of the drug-free workplace act is

> to promote drug-free workplaces in order that employers in the state be afforded the opportunity to maximize their levels of productivity, enhance their competitive positions in the marketplace, and reach their desired levels of success without experiencing the costs, delays, and tragedies associated with work-related accidents resulting from drug abuse by employees. It is further the intent of the Legislature that drug abuse be discouraged and that employees who choose to engage in drug abuse face the risk of unemployment and the forfeiture of workers' compensation benefits.

§ 440.101(1). There is no evidence in either the statutory language or the legislative structure that the Legislature contemplated a private cause of action against employers who fail to follow drug-free workplace program procedures.

Finally, as before, Plaintiff fails to link this particular Defendant, identified as an "owner/agent" of the Club, to her employment there. For all the foregoing reasons, we dismiss Count II with prejudice.

### C. *Count III - Willful Violations of Fair Labor Standards Act*

In Count III, Plaintiff asserts a willful violation of the Fair Labor Standards Act ("FLSA"). She alleges that Defendant "willfully chose to make one set of rules" for her and a separate set of rules for other staff, management, and directors; "fabricated information for the sole purpose of removing" her from her position, "willfully chose not to adhere to the guidelines of its Policies & Procedures or the guidelines of the [FLSA] in their malicious course of actions," and "willfully chose not to adhere to the Wage & Hour guidelines[.]" Third Am. Compl., ¶¶ 41-44.

This count is nearly identical to the one in her original complaint that was dismissed for failure to state a claim under the FLSA. *See* Order at 8-10. As we discussed in that earlier Order, the purpose of the FLSA is to ensure just compensation for workers for either actual work done or overtime. *See, e.g.*, *Dade County, Fla. v. Alvarez*, 124 F.3d 1380, 1384 (11th Cir. 1997). Plaintiff has not cured the deficiency we pointed out before, that is, she still has not alleged a lack of compensation for either actual work done or for overtime. Additionally, Plaintiff has not alleged that Defendant is her employer, a prerequisite for liability under the FLSA. *See, e.g., Patel v. Wargo*, 803 F.2d 632, 635 (11th Cir. 1986) (liability under the FLSA is premised on an employer-employee relationship; citing 29 U.S.C. § 206(a) (imposing an obligation on an employer to pay his employees)); *Ashby v. Nat'l Freight, Inc.*, No. 8:07-cv-898-T-30MSS, 2007 WL 3231803, at *1 (M.D. Fla. Oct. 30, 2007) (complaint dismissed under Rule 12(b)(6) where plaintiff failed to allege sufficient facts to impose liability on Brown as his "employer" under the FLSA). Accordingly, Count III does not set out a viable FLSA claim and is dismissed with prejudice.

### D.    *Count IV - Violation of Privacy Rights*

Plaintiff makes a generalized claim for invasion of privacy in Count IV. She alleges that Defendant "immediately spread the word to Food & Beverages employees" that she had been suspended for drinking on the job, and told Club employees that if they spoke with her they would be terminated as well, in violation of Section 7 of the National Labor Relations Act. Third Am. Compl., ¶¶ 46-47. She asserts she "only sought to have counsel retained and present," but Defendant chose not to provide her with her personnel file or any alleged complaints, and chose to fire her "for not following its [through Controller William Vander May's] illegal demands." *Id.*, ¶ 49. Immediately following the suspension, Plaintiff alleges that she received calls "from club members, peers from other clubs and members from other

clubs (see Statement of Facts § 24[5])" and since the incident, she has been unable to work in a similar manner or position. *Id.*, ¶ 50-51.

Plaintiff raised a claim for violation of privacy rights in her original complaint which we dismissed for failure to properly state that claim. *See* Order at 10-12. Her present claim, which is nearly identical to the former claim, must be dismissed for the same reason. In the previous Order, we noted that the Florida courts recognize four types of invasion of privacy causes of action, but that Plaintiff had not even attempted to allege the first two types (appropriation or intrusion). *Id.* at 10. Accordingly, we evaluated Plaintiff's claim against the other two types of torts, public disclosure of private facts and false light invasion of privacy. *Id.* at 10-12. We do so again here.

### 1. *Public Disclosure of Private Facts*

With regard to the first type of invasion of privacy claim we are considering, i.e., public disclosure of private facts, Plaintiff is required to prove four elements: 1) the disclosure was public; 2) private facts were discussed; 3) the matter publicized was highly offensive to a reasonable person; and 4) the matter is not a legitimate concern to the public. *See, e.g., Heath v. Playboy Indus., Inc.*, 732 F. Supp. 1145, 1148 (S.D. Fla. 1990) (citing *Cape Publications v. Hitchner*, 549 So. 2d 1374 (Fla. 1989) (citing Restatement (Second) of Torts § 652D (1977))). In our previous Order, we noted "it is theoretically possible that [Defendants] alerting employees who had no reason to know of her suspension based on 'drinking on the job' could constitute [public disclosure]." *See* Order at 10-11. However, as we were not able to discern in the original complaint whether Plaintiff's suspension for drinking on the job was actually

---

[5] Paragraph 24 states that Plaintiff heard from club members, peers from other clubs, and others regarding her termination for drinking on the job.

made public, we concluded that she had failed to establish the first element of this cause of action.

In the Third Amended Complaint, Plaintiff alleges that she heard from club members, peers from other clubs, and others regarding her termination for drinking on the job. Third Am. Compl., ¶¶ 24, 50. It seems that "peers from other clubs" are people who would have no reason to know of her termination for drinking on the job, arguably making it a public disclosure. However, Plaintiff has not identified the source of the information. She asserts that Defendant spread the word to Food & Beverage employees that Plaintiff was suspended for drinking on the job, and that she heard from others outside the Club regarding her termination, but she does not make a connection between the two. In her Statement of Facts, Plaintiff mentions conversations about her termination/suspension among Club employees, but no one from Defendant Morgan Stanley is mentioned. Moreover, even if Defendant did tell employees at the Club about Plaintiff's termination, she has not alleged that Defendant disseminated the information to any person who did not have a reason to know about it, within or outside of the Club. We find that Plaintiff has failed to lay out conduct attributable to Defendant that would make it liable for a public disclosure of private facts invasion of privacy claim.

### 2. *False Light Invasion of Privacy*

False light invasion of privacy is a publication of facts which places a person in a false light even though the facts themselves may not be defamatory. *See, e.g., Agency for Health Care Admin. v. Associated Indus. of Fla., Inc.*, 678 So. 2d 1239, 1252 n.20 (Fla. 1996). The elements of this tort are summarized as: 1) the publication, 2) of private facts, 3) that are offensive, and 4) are not of public concern. *Cape Publications*, 549 So. 2d at 1377 (citing to the Restatement (Second) of Torts § 652D (1977)). As discussed above in connection with the other

invasion of privacy tort, Plaintiff has failed to adequately plead that this Defendant knew about and then spread the fact that Plaintiff had been suspended or terminated for drinking on the job.

In summary, we find that Plaintiff has failed to sufficiently plead a cause of action for false invasion of privacy against this Defendant. Accordingly, Count IV is dismissed with prejudice.

### E.     *Count V - Spoliation of Evidence*

Plaintiff previously brought a claim for improper destruction of corporate files. We dismissed that claim because Plaintiff had not properly stated any other claim for relief, and as we explained, in Florida a first-party spoliation of evidence claim cannot stand as an independent cause of action. *See* Order at 13 (citing *Martino v. Wal-Mart Stores, Inc.*, 908 So. 2d 342 (Fla. 2005)). However, we noted that we would reconsider a spoliation claim "if Plaintiff can amend her complaint and state a claim that could serve as a predicate for this dependent claim." *Id.*

In Count V of the Third Amended Complaint, which is entitled "Spoliation of Evidence," Plaintiff alleges she was informed that her personnel file contained complaints regarding violations of the Club's policies, that none of the complaints were ever produced to her, and that Defendant "merely wished to terminate Plaintiff through temporary fabrication of 'issues' against Plaintiff, which disappeared from the files according to other remaining staff members." Third Am. Compl., ¶ 55.

Plaintiff mentions by name Clifford Wilson, Steven Philbrook, and William Vander May, *id.*, none of whom are alleged to have been employed by Defendant Morgan Stanley. She asserts in footnote 20 that the spoliation claim is "[a] dependent claim predicated by Counts II and III." *Id.*, ¶ 20 n.34. Thus, it seems that Plaintiff's spoliation claim depends on the

willful violation of the Drug-Free Workplace Act (Count II) and FLSA (Count III) claims. However, we have already determined that those two claims should be dismissed, meaning they cannot serve as predicate claims for Count V. Moreover, Plaintiff has not asserted that this Defendant had any responsibility for her personnel file, or that this Defendant had anything to do with any destruction of material that Plaintiff only implies may have taken place. We therefore conclude that Plaintiff has not properly pled nor can she maintain the spoliation of evidence claim. Count V is dismissed with prejudice.

### F.      *Count VI - Wanton, Reckless and Willful Misconduct*

Plaintiff's previous claim for wanton, reckless and willful misconduct was dismissed because based on the facts presented in the original complaint, we were unable to discern any cognizable cause of action. *See* Order at 14-15. In its present form, Plaintiff alleges that Defendant "acted in a wanton, reckless and willful manner in [its] course of numerous actions and inactions of misconduct (see Third Amended Complaint ¶¶ 29-31[6]) relating to violations of Federal (FLSA, Weingarten Rights) and Florida Statutes (FL. Stat. 448.045 - Wrongful Combination) for the sole purpose of damaging [her]." Third Am. Compl., ¶ 59. She also alleges (exactly as before) that Defendant willfully and maliciously acted in a manner contrary to its Policies and Procedures, and that Defendant's "extreme and outrageous conduct has resulted in Plaintiff's severe emotional distress[.]" *Id.*, ¶¶ 60-61. In footnote 38, Plaintiff states that the emotional distress was caused by the shock and inability to obtain any comparable employment as a result of Defendant's actions and inactions. *Id.* at 23 n.38.

Once again, we are unable to discern any cognizable cause of action. If Plaintiff is attempting to raise a claim for intentional infliction of emotion distress, as discussed in our

---

[6]      These paragraphs are contained in Count I, her claim for unpaid wages and benefits.

previous Order, under Restatement (Second) of Torts § 46 (2007), recovery for pure emotional distress absent physical injury is rarely possible. *See* Order at 15. Plaintiff has not alleged any physical injury, and therefore has not sufficiently asserted a claim for this tort. And, as before, Plaintiff has not tied this Defendant to the ambiguous conduct she alleges took place. Accordingly, Count VI is dismissed with prejudice.

### G.     *Count VII - Negligence*

In Plaintiff's newly-constituted negligence claim, she alleges the existence of a duty by Defendant to "rectify the 'wrongful combination' and [illegal] termination (see Third Amended Complaint ¶¶ 29-31) on false claims at the hands of Controller William Vander May, General Manager Clifford Wilson, and Steven Philbrook as Club Manager and there was a breach of that duty for the personal gain of a few (Philbrook, Wilson & Vander May)." Third Am. Compl., ¶ 63. She further alleges that Defendant failed to exercise care in adherence to federal and state laws, and its Policies and Procedures, for the sole purpose of causing harm to Plaintiff. *Id.*, ¶ 64.

We dismissed Plaintiff's previous negligence claim because she failed to allege physical injury, a well-established requisite to pursuing a negligence claim in this State (with two narrow exceptions not applicable here), and because she failed to plead the existence of a duty, a breach of that duty, proximate causation, and damages. *See* Order at 16. Plaintiff has again failed to allege physical injury, and on that ground this count fails to properly plead a claim for negligence. Moreover, although Plaintiff now recites some of the magic words -- "existence of a duty" and "breach of that duty" – her allegations are vague and conclusory and she fails to plead facts that support the elements of a negligence claim. Finally, she again fails to alleged how this Defendant is directly or indirectly liable for the alleged wrongful conduct of Vander May, Wilson, and Philbrook. Count VII is dismissed with prejudice.

### H.     *Count VIII - Slander - Defamation of Character*

In Count VIII, Plaintiff makes a claim for slander and defamation of character.  To establish a claim for defamation in Florida, a plaintiff must allege that:  1) the defendant published a false statement, 2) the statement was communicated to a third party, and 3) the plaintiff suffered damages as a result of this publication.  *Nautica Int'l, Inc. v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333, 1344 (S.D. Fla. 1998).  To establish slander, a plaintiff "must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred."  *Fowler v. Taco Viva, Inc.,* 646 F. Supp. 152, 157-58 (S.D. Fla. 1986).

Plaintiff's previous claim for "slander - defamation of character" was dismissed because she failed to provide any facts supporting such a claim.  *See* Order at 17.  Her present claim must be dismissed for the same reason.  Plaintiff now alleges that Defendant published, or permitted to be published, "unprivileged oral communications [] to various third parties (club members, clubs and other persons/entities previously named. . .)[.]" Third Am. Compl., ¶ 66.  She continues that she has been unable to secure similar employment due to the unfounded and erroneous allegations and behaviors of Defendant which are the basis for this claim.  *Id.*, ¶ 67.  But Plaintiff has not shown how this Defendant is responsible for or complicit in publishing the statements, the substance of the statements, or to whom the statements were communicated.  Moreover, her allegations are completely conclusory.  We dismiss this claim with prejudice.

### I.     *Count IX - Physical and Mental Anguish*

Plaintiff's previous claim for physical and mental anguish was dismissed because she failed to allege physical injury or some other tortious conduct that might serve as a predicate for this claim.  *See* Order at 18.  As is the case with negligence claims, Florida follows the

"impact rule" for claims based on mental anguish. *See Forde v. Royal's, Inc.*, 537 F. Supp. 1173, 1175 (S.D. Fla. 1982). "Under this rule, a plaintiff cannot recover damages for mental anguish and suffering absent physical injury or some other type of tortious conduct." *Id.*

Plaintiff's new physical and mental anguish claim does not cite any physical injury. She does assert in the complaint that she "alleged tortious conduct (see Counts II and III) predicating this claim." Third Am. Compl., ¶ 69. However, those counts - for willful violations of the drug-free workplace act (Count II) and of the FLSA (Count III) – are not tort-based claims, neither sets out a proper cause of action, and Defendant's liability for whatever actions are asserted therein has not been established. Accordingly, we find that Plaintiff has failed to properly plead a claim for physical and mental anguish and dismiss Count IX with prejudice.

### J.    *Counts X and XI - Personal Damages and Punitive/Special Damages*

Plaintiff asserts in Count X of the Third Amended Complaint that she "has alleged tortious conduct (see Counts II and III) predicating this claim; . . . has lost all savings and retirement; . . . has lost health insurance; [and] . . . has lost her credit rating due to the actions and inactions" of Defendant. *Id.*, ¶¶ 72-75. In Count XI, she again cites unspecified allegations of "tortious conduct (see Counts II and III) predicating this claim" and asserts that Defendant "schemed and carried out a plan of actions and inactions for the express purpose of terminating and damaging [her]." *Id.*, ¶¶ 77-78.

We dismissed her previous claims for personal damages and punitive/special damages because, although Plaintiff recounted how she suffered financially as a result of her claims, she had failed to plead any viable claim upon which she could obtain such damages. *See* Order at 19. We pointed out that Florida law does not allow for an independent cause of action for punitive damages, and personal and punitive damages are a remedy, not a cause of action by

themselves. *See, e.g., Jarzynka v. St. Thomas Univ. School of Law*, 310 F. Supp. 2d 1256, 1263, 1269 (S.D. Fla. 2004). As discussed above, Counts II and III fail to state a claim and will be dismissed. Plaintiff has again failed to plead any viable claim upon which she can obtain damages, and therefore Counts X and XI must be dismissed with prejudice.

### III.   CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Defendant Morgan Stanley Properties a/k/a Morgan Stanley Real Estate Fund IV Domestic - GP, LLC's Motion to Dismiss Third Amended Complaint with Prejudice [D.E. 73] is **GRANTED** in its entirety. Plaintiff's Third Amended Complaint is **DISMISSED WITH PREJUDICE**. This case is now CLOSED.

**DONE AND ORDERED** in Chambers at Miami, Florida this 15th day of April, 2008.

EDWIN G. TORRES
United States Magistrate Judge